UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA HOWE, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MENDOCINO COUNTY, et al.,<br><br>    Defendants. | Case No. 20-cv-02622-SI<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 9 |

On May 5, 2020, defendants County of Mendocino, Tammy Moss Chandler, and William Schurtz (collectively, "defendants") filed the instant motion to dismiss all 22 claims in plaintiff's complaint. Dkt. No. 9 (Mtn. to Dismiss). The motion is GRANTED in part and DENIED in part.

**BACKGROUND**

Plaintiffs Barbara Howe and Jani Sheppard filed a 130+ page complaint that, despite its volume, says surprisingly little. Ms. Howe and Ms. Sheppard worked together at Mendocino County's Health and Human Services Agency ("HHSA"). Ms. Howe, a heterosexual female over the age of 40, is the former Assistant HHSA Director and was allegedly terminated on May 30, 2019. Dkt. No. 1 ¶¶ 22 and 43. Ms. Sheppard, an African-American heterosexual female over the age of 40, is still employed by HHSA as the Senior Program Manager. *Id*. ¶¶ 23 and 154.

Defendants are: (1) Mendocino County, (2) Tammy Moss Chandler, the current Director of HHSA, and (3) William Schurtz, Mendocino County's current Director of Human Resources. *Id.* ¶¶ 25, 29, 30. Ms. Chandler and Mr. Schurtz are sued in their individual capacity. Dkt. No. 1 at 1.[1]

### I.   Facts Alleged Concerning Plaintiff Barbara Howe

From approximately October 16, 2017 to May 30, 2019, Ms. Howe was employed by Mendocino County as HHSA Assistant Director. Dkt. No. 1 at ¶ 48. In late April of 2019, Ms. Howe learned about impending PG&E power shutoffs in anticipation of fire season. *Id.* ¶ 79. As Assistant Director of HHSA, Ms. Howe was charged with ensuring public health staff were prepared for the power shutoffs. *Id.* ¶¶ 80-81. This included overseeing logistics and communication between Public Health staff and PG&E,, as well as preparing plans to procure generators for hospitals to use during the power shutoffs as necessary. *Id.* ¶¶ 87-91. Ms. Howe's plan coalesced during a May 15, 2019 meeting. *Id.* ¶¶ 82-91. The complaint alleges Ms. Howe "planned to discuss and obtain buy-in from" defendant Tammy Chandler regarding the generators at the next scheduled meeting on May 24, 2019. *Id.* ¶ 97. However, on May 24, 2019, Ms. Chandler and the then Director of Human Resources, Heidi Dunham, allegedly "worked for their own personal interests to terminate Ms. Howe without any due process." *Id.* ¶ 98. The complaint alleges Ms. Chandler "dictated or drafted a one sentence resignation letter with Heidi Dunham … cornered Ms. Howe in her office during a regularly scheduled meeting and had Dunham introduce the resignation letter to [Ms. Howe]…[who] reluctantly signed the one sentence resignation memo under the duress and menace created illegally by [Ms. Chandler] and Heidi Dunham." *Id.* ¶¶ 98 – 108. The complaint is silent on what was said or done by Ms. Chandler or Ms. Dunham to create "menace," "duress," or "illegality." The complaint alleges defendants sought Ms. Howe's termination essentially because she was too good at her job and served the public too well, and because Ms. Howe's "performance, age, wisdom [and] sexual orientation … were a threat" to defendants. *Id.* ¶¶ 110-111,

At some point after Ms. Howe's termination, the complaint alleges, Ms. Howe texted Ms.

---

[1] For ease of reference, all citations to page numbers refer to the ECF branded number in the upper right corner of the page.

Chandler "about the reason for [Ms. Howe's] termination." *Id.* ¶ 168. The complaint does not provide the full text sent by Ms. Chandler. Instead, the complaint alleges Ms. Howe stated in part that Ms. Chandler "was going to be at 'dis-ease' for having implemented the wrongful termination against her[.]" *Id.* ¶ 169. The complaint alleges the term "dis-ease" meant stress that would be brought on by Ms. Chandler's alleged illegal and underhanded behavior. *Id.* ¶ 170. The complaint alleges Ms. Chandler expressed an irrational fear of the term "dis-ease" and construed it as Ms. Howe making a threat to give Ms. Chandler a disease. *Id.* ¶ 175.[2]

The complaint goes on to allege Katharine Elliot, the Mendocino County Counsel, was enlisted by Ms. Chandler and Ms. Dunham in an "attempt to cover-up their illegal conduct and … to further harm and damage Ms. Howe." *Id.* ¶ 113. Ms. Elliot allegedly filed for a restraining order[3] against Ms. Howe in furtherance of a "plan to destroy" her "personally, professionally, [and] maliciously." *Id.* ¶ 114. Presumably in connection with the restraining order, the complaint alleges pictures of Ms. Howe were posted in county offices "to defame and slander her as if she were a criminal… [and] to intimidate other county staff about the fate they would suffer at the hands of defendants" *Id.* ¶¶ 130-131. It seems no restraining order was ever obtained. *Id.* ¶ 138 ("civil harassment case was dismissed because the COUNTY was not a proper petitioner") (emphasis in original). The complaint alleges that defendants have worked to "disappear" important witnesses, such as Ms. Elliot and Ms. Dunham, to other states to impede Ms. Howe's claims but give no further explanation or details regarding the allegation. *Id.* ¶ 146.

On August 27, 2019, Ms. Howe filed her Original Government Claim. *Id.* ¶ 183.

**II.     Facts Alleged Concerning Plaintiff Jani Sheppard**

Plaintiff Jani Sheppard began working for HHSA in May 2018 as a Senior Program

---

[2] The complaint fails to provide any dates/chronology giving context to these events or helping the reader to understand alleged cause and effect.

[3] While it seems likely that the grounds for the restraining order could have included Ms. Howe's text to Ms. Chandler, this is not made clear in the complaint. Indeed, the complaint does not provide specifics regarding the restraining order and the little information that is provided is scattered throughout the complaint.

Specialist. *Id.* ¶ 23. She was later promoted to Senior Program Manager, the title she currently holds. *Id.* The complaint alleges Ms. Sheppard became a target for defendants because during Ms. Howe's tenure at HHSA, she supported Ms. Sheppard. *Id.* ¶ 179. Therefore, defendants allegedly viewed Ms. Sheppard as a "source and advocate for Ms. Howe and a threat" to defendants. *Id.* The complaint alleges Ms. Chandler "enlisted Meredith Reinhard[4] to make allegations of discriminatory conduct by Ms. Sheppard"[5] and "failed to correct insubordination by Ms. Sheppard's direct reports." *Id.* ¶¶ 184, 191. The complaint alleges: "Ms. Sheppard commented to Carol Mordhorst[6] that Ms. Reinhart's[7] insubordination, [Ms. Chandler]'s failure to address the insubordination and the statement[8] that Ms. Sheppard was 'just an angry black woman' were discriminatory and racist." *Id.* ¶ 192. The complaint further alleges that at some point the County hired an outside law firm to conduct a discrimination investigation into Ms. Sheppard and that on March 4, 2020, Ms. Sheppard "was cleared by [the law firm] of any wrongdoing." *Id.* ¶¶ 195-197. However, the complaint goes on to allege defendants

> retaliated against Ms. Sheppard by implementing adverse employment actions, including reassignment consistent with a two-position demotion. Ms. Johnson told Ms. Sheppard that she was there to watch over Ms. Sheppard and that [Ms. Chandler and other defendants] were very upset that the COUNTY had to spend $52,000 to investigate claims of discrimination leveled at Ms. Sheppard and other individuals under her supervision… Ms. Sheppard was denied a position, for which she applied, was qualified and was due a preference under the COUNTY's ordinance and civil service rules … The open position was provided to Jody Johnson, a person who did not have the basic requirements or other relevant experience to qualify for or perform the job.

*Id.* ¶¶ 202-206.[9] The complaint goes on to allege that defendants

---

[4] This is the complaint's only mention of Ms. Reinhard. The complaint is silent regarding Ms. Reinhard's job title or role, if any, within HHSA.

[5] The complaint is silent as to what the allegations against Ms. Sheppard were or when they were made.

[6] The complaint is silent on who Carol Mordhorst is and what role, if any, she had at HHSA.

[7] It is unclear whether this is a typo and Ms. Reinhar*t* is the same person as Ms. Reinhar*d*. See Dkt. No. 1 ¶¶ 184 and 192.

[8] The complaint is silent regarding who made this statement.

[9] The complaint does not provide the dates upon which these alleged actions took place, making it difficult for the reader to understand when these allegedly retaliatory actions happened

4

> failed to timely provide promised reports to Ms. Sheppard about the sources of complaints against her, especially complaints that rely on confidential information that was incorrectly cited or intentionally misrepresented to create the pre-text for Ms. Sheppard's adverse employment actions, a two-position demotion, exclusion from meetings and projects core to Ms. Sheppard's responsibilities and threatened termination.

*Id.* ¶ 210.

The complaint alleges that in approximately August 2019, "in the turbulence after the retaliatory termination of Ms. Howe, Ms. Sheppard had an oral agreement" with the Community Foundation to provide independent services to put on an Executive Leadership Training. *Id.* ¶ 615. Allegedly, the Community Foundation's executive director, Megan Allende, Ms. Chandler's "close personal friend," promised to pay Ms. Sheppard $12,000 for her services. *Id.* ¶¶ 615, 618. The funds from which Ms. Sheppard would be paid were allegedly controlled by Ms. Chandler. *Id.* ¶ 619. The complaint alleges Ms. Chandler contacted "Ms. Allende to cancel Ms. Sheppard's agreement to conduct the Executive Leadership Program." *Id.* ¶ 625. While Ms. Allende did not cancel Ms. Sheppard's role altogether, Ms. Sheppard's workload was significantly reduced and she allegedly was only paid $2,000. *Id.* ¶ 626.

On or about January 27, 2020, Ms. Sheppard joined Ms. Howe in the filing of a Second Amended Government Claim. *Id.* ¶ 182.

### III.   Allegations Regarding Heidi Corrado

The complaint alleges that in early 2019, Ms. Howe and Ms. Sheppard experienced performance issues with Heidi Corrado, a newly hired Program Administrator. *Id.* ¶ 222. The issues included underperformance, insubordination, and misrepresentations on grant proposals – these issues were reported by plaintiffs to defendants Ms. Chandler and Mr. Schurtz for them to act. *Id* ¶¶ 222, 225, 228, 229. Allegedly, no action was taken against Ms. Corrado, and plaintiffs were concerned Ms. Corrado's misrepresentations could jeopardize a grant proposal as well as future grants. *Id.* ¶ 225. The complaint alleges Ms. Corrado was given preferential treatment because she is a lesbian and that Ms. Corrado's "protected and favorable treatment in the face of egregious

---

relative to the alleged protected activity.

5

underperformance and gross insubordination" evidences defendants "acting in their individual best interests … and not serving the public at large." *Id*. ¶¶ 234, 320. Stated another way, the complaint alleges plaintiffs were humiliated and shamed as heterosexuals in "a predominately European, lesbian environment." *Id*. ¶ 320.

### IV.  Allegations Regarding Grand Jury Report

The complaint also discusses a May 31, 2019 Grand Jury Report regarding the Board of Supervisor's failure "to properly oversee and correct the systemic failure of management's human and personnel practices while ignoring the mounting social, mental health, and economic problems facing the citizens of Mendocino County." *Id*. ¶ 117. From the complaint, it is unclear (1) what exactly the Grand Jury Report concluded and (2) what if anything the Grand Jury Report said about defendants. For example, couched between paragraphs allegedly stating conclusions from the Report, is a paragraph stating: "the funded position of Assistant CEO remained unfilled because such a person would be a check and balance on the power of [Ms. Chandler] and [Mr. Schurtz]." *Id*. ¶ 120. It is unclear whether the statement is plaintiffs' conclusion or the Grand Jury's.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court is not required to accept as true "merely

conclusory [allegations], unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

The complaint fails to present a coherent timeline, is replete with conclusory statements, and fails to support the majority of the causes of action.

**I.      Federal Causes of Action – Claims 1-13**

Claims 1-13 are all brought under §1983 and are largely duplicative. The first 13 claims are:

1. Illegal Intrusion on First Amendment Right to Free Speech
2. Retaliation – Free Speech Monell Action – Based on an Official Policy, Practice or Custom
3. Retaliation – Free Speech Monell Action – Based on Act of Final Policymaker
4. Retaliation – Free Speech Monell Action – Based on Ratification
5. Retaliation – Free Speech Monell Action – Based on Policy of Failure to Train or Supervise
6. Wrongful Termination (Howe) – Wrongful Reduction (Sheppard) – Violation of 14th Amendment Right to Property and Equal Protection – Official Policy, Practice, or Custom
7. Wrongful Termination (Howe) – Wrongful Reduction (Sheppard) – Violation of 14th Amendment Right to Property and Equal Protection – Act of Final Policymaker
8. Wrongful Termination (Howe) – Wrongful Reduction (Sheppard) – Violation of 14th Amendment Right to Property and Equal Protection – Based on Ratification
9. Wrongful Termination (Howe) – Wrongful Reduction (Sheppard) – Violation of 14th Amendment Right to Property and Equal Protection – Policy of Failure to Train or Supervise
10. Wrongful Termination (Howe) – Wrongful Reduction (Sheppard) – Violation of 14th Amendment Right to Due Process – Official Policy, Practice or Custom
11. Wrongful Termination (Howe) – Wrongful Reduction (Sheppard) – in Violation of 14th Amendment Right to Due Process – Act of Final Policymaker
12. Wrongful Termination (Howe) – Wrongful Reduction (Sheppard) – in Violation of 14th Amendment Right to Due process – Ratification
13. Wrongful Termination (Howe) – Wrongful Reduction (Sheppard) – in Violation of 14th Amendment Right to Due Process – Policy of Failure to Train or Supervise

   **A.      Claim 1: Illegal Intrusion to First Amendment Free Speech**

"The First Amendment shields public employees from employment retaliation for their

1    protected speech activities." *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013). The
2    Ninth Circuit "follow[s] a sequential five-step inquiry to determine whether an employer
3    impermissibly retaliated against an employee for engaging in protected speech." *Ellins v. City of*
4    *Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013). However, only the first three steps, which are
5    plaintiffs' burden, are relevant here. "First, the plaintiff bears the burden of showing: (1) whether
6    the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen
7    or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating
8    factor in the adverse employment action." *Id.* (*quoting Robinson v. York*, 566 F.3d 817, 822 (9th
9    Cir. 2009) (internal quotation marks and citations omitted).

First, the complaint fails to establish what specific protected statement(s) plaintiffs made, let alone that those statements amounted to a substantial motivating factor in the adverse employment action. The complaint is silent regarding exactly *what* statements Ms. Howe and Ms. Sheppard made and *when*. Second, the facts regarding the alleged adverse employment actions against plaintiffs are fuzzy at best. The complaint makes sweeping conclusory statements like defendant Mendocino County "deprived [plaintiffs] of their rights under the First Amendment … when it terminated Ms. Howe and retaliated against Ms. Sheppard for having voiced concerns against a hostile work environment, unlawful employment practices, violations of Public Health laws for the State of California." Dkt. No. 1 ¶ 253. While the complaint alleges Ms. Sheppard was "demoted", she still works for the HHSA and holds the same title. *Id.* ¶¶ 23, 286. Further, the complaint states defendant County "took adverse employment action against Ms. Sheppard … including … reducing her access to information for and participation in meetings related to her employment." *Id.* ¶ 255. But the complaint does not explain which meetings Ms. Sheppard was kept from, how she was kept from them, or when.

The first cause of action is therefore DISMISSED without prejudice.

### B.     Claims 2-5: Retaliation for Free Speech

"A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First

Amendment rights." *Arizona Students' Assoc. v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). To prove retaliation in violation of the First Amendment, a plaintiff must show:

> (1) [that] he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). "To rise to a constitutional violation, the defendant's adverse action 'must be of a nature that would stifle someone from speaking out.'" *Id*. at 544.

Again, plaintiffs fail to plead sufficient facts to support their claims. The complaint fails to state exactly what plaintiffs said that was protected speech and when. Further, the complaint fails to provide anything more than conclusory statements regarding alleged adverse actions taken against plaintiffs as discussed above. As such, claims 2-5 are DISMISSED without prejudice.

### C. Claims 6-13: 14th Amendment Due Process Claims (Wrongful Termination – Howe; Wrongful Reduction – Sheppard)

To state a procedural due process claim, a plaintiff must allege the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (internal quotation marks and citation omitted).

Defendants argue plaintiffs' claims are "vague and difficult to decipher." Dkt. No. 9 at 19. The Court agrees. Defendants further argue plaintiffs cannot bring due process claims because Ms. Howe technically resigned, and Ms. Sheppard is still employed. This is not a fair characterization the complaint's allegations. The complaint alleges, albeit inarticulately, that Ms. Howe was coerced into resigning and that Ms. Sheppard was demoted. As discussed above, if plaintiffs can provide some meat to these bare bone allegations they may have viable claims. As such, claims 6-13 are DISMISSED without prejudice.

**D.     Other Issues With Federal Claims**

   1.     **Claim 2, 6, 10: Official Policy, Practice or Custom**

Plaintiff's 2nd, 6th, and 10th claims fail because plaintiffs do not adequately allege how defendants employed an official policy, practice, or custom to deprive plaintiffs of their rights. Plaintiffs allude to general findings in the grand jury report, but provide few, if any, specifics of how the grand jury report supports the allegations in the complaint.

   2.     **Claim 5, 9, and 13: Failure to Train or Supervise**

Plaintiff's 5th, 9th, and 13th claims must be dismissed because plaintiffs do not adequately allege how defendants failed to adequately train or supervise their employees. Plaintiffs allude to what could be viable allegations against defendants for failing to reprimand Heidi Corrado. However, these allegations are murky at best and no timeline or other specifics are provided.

**II.     California State Law Causes of Action – Claims 14-22**

Plaintiffs' California state claims 14-22 are largely duplicative. As stated in the complaint, claims 14-22 are:

   14. Retaliation in Violation of Labor Code §1102.5

   15. Race Discrimination in Violation of FEHA Gov. Code §12940

   16. Retaliation in Violation of FEHA Gov. Code § 12940(h)

   17. Hostile Work Environment/Harassment in Violation of FEHA Gov. Code §12940(j)(1)

   18. Intentional Infliction of Emotional Distress

   19. Breach of Oral, Implied, and Implied-in-Fact Contracts

   20. Willful Violations of California Labor Code §§ 204 and 510

   21. Willful Violations of California Labor Code § 226.7

   22. Intentional Interference with Prospective Economic Advantage and Contract

**A.     14th and 16th Claims – Retaliation**

Like the federal claims for retaliation, the 14th and 16th claims for California State retaliation are insufficiently plead. For example, the complaint alleges defendant "County retaliated

against Ms. Howe and Ms. Sheppard because they opposed non compliance with the civil service rules regarding incompetent employees failing to efficiently and competently serve the public at large, falsifying grant and audit reports to the state and misrepresenting to the State their roles and responsibilities in the County." Dkt. No. 1 ¶ 495. These vague and ambiguous allegations do not meet federal pleading standards. Plaintiffs' opposition to the instant motion provides some more information, though still insufficient, stating plaintiffs were retaliated against for reporting "individuals [who] were falsifying reports and making misrepresentations to State Auditors jeopardiz[ing] State and Federal grants." Dkt. No. 17 at 27 (Opposition). The complaint and opposition beg the questions: When were these reports allegedly falsified, who falsified them (just Heidi Corrado or others?), and what about the reports were false?

Plaintiffs' 14th and 16th claims are therefore DISMISSED without prejudice.

### B.     15th Claim – Race, Age, and Sex Discrimination

The 15th cause of action is brought by both plaintiffs. Ms. Howe is a heterosexual white woman over the age of 40. Dkt. No. 1 at ¶ 43. The complaint does not include any allegations detailing instances of defendants discriminating against Ms. Howe due to her age or race. Ms. Sheppard is a heterosexual African American woman over the age of 40. *Id*. at ¶ 154. The complaint does not include any allegations of defendants discriminating against Ms. Sheppard due to her age. The closest the complaint comes to alleging Ms. Sheppard was racially discriminated against is an unnamed person saying Ms. Sheppard was "just an angry black woman." Dkt. No. 1 at 192.

Finally, the complaint makes the conclusory allegations that (1) Ms. Corrado is a lesbian and was given preferential treatment because she is a lesbian (¶¶228-230), plaintiffs worked in a "predominantly lesbian environment" (¶ 320), and Ms. Sheppard was passed over for a promotion in favor of a lesser qualified, but unidentified, lesbian (¶421). The complaint also alleges plaintiffs were "treated differently than other similarly situated non-Caucasion, non-heterosexual, male and younger employees." *Id*. ¶¶ 511-512.

In light of these insufficient, barebones allegations the 15th cause of action is DISMISSED without prejudice.

### C. 17th Claim – Hostile Work Environment

FEHA makes it unlawful for any employer or person to harass an employee because of, inter alia, age, race, or disability. Cal. Gov't Code § 12940(j)(1). A prima facie case of harassment under FEHA is stated when plaintiffs allege: (1) they are members of a protected group; (2) they were subjected to harassment because they belonged to this group; and (3) "the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am.*, LLC, 704 F.3d 1235, 1244 (9th Cir. 2013).

Plaintiffs fail to allege they were subjected to harassment because of a protected status with any particularity. The complaint is silent as to who, when, or where they were harassed.

As such, the 17th cause of action is DISMISSED without prejudice.

### D. 18th Claim –Intentional Infliction of Emotional Distress (IIED)

To prevail on an IIED claim, a plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (applying California law).

The complaint makes conclusory allegations regarding defendants' alleged "extreme and outrageous" conduct, namely: "placing mugshots around county offices when criminal conduct was absent, abusing county resources to pursue a civil harassment TRO and workplace TRO … faking lack of knowledge about 'dis-ease,' all to destroy Ms. Howe … reducing [Ms. Sheppard's] employment, falsely accusing her of helping Ms. Howe obtain evidence that contradicted [Ms. Chandler]" etc. *Id*. at 582-583. Plaintiffs' allegations about their emotional distress are likewise devoid of specifics or proof, merely alleging defendants' "conduct caused Ms. Howe and Ms. Sheppard pain, anxiety, inconvenience, mental distress, severe emotional distress, loss of enjoyment of life, loss of consortium, damage to career, damage to self image, misery, and other non-economic damages including suffering." *Id*. at 581.

Therefore, the 18th cause of action is DISMISSED without prejudice.

### E. 19th Claim – Breach of Oral, Implied, and Implied-In-Fact Contract

"The elements of a breach of oral contract claim are the same as those for a breach of written contract: a contract; its performance or excuse for nonperformance; breach; and damages." *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014); *see also Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993) ("Under basic contract law an offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain.") (internal citation and quotation marks omitted). "A cause of action for breach of implied contract … is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). However, "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975). "The reason for this rule is simply that where the parties have freely, fairly, and voluntarily bargained for certain benefits in exchange for certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled." *Id*.

Plaintiffs' complaint does not articulate what the terms of the alleged oral contract were nor does it state who, when, or how the terms were allegedly breached.

Therefore, the 19th cause of action is hereby DISMISSED without prejudice.

### F. 20th and 21st Claims: Violations of California Labor Code §§ 204 & 510 and § 226.7 (Ms. Sheppard Only)

In the 20th cause of action, Ms. Sheppard alleges defendant County owes her "unpaid compensation … for her overtime and double overtime. Because of DEFENDANT COUNTY's willful misclassification and failure to accurately record hours worked…" *Id*. ¶ 599. In the 21st cause of action, Ms. Sheppard also alleges she was denied meal and rest break periods. *Id*. ¶ 606 (emphasis in original).

Ms. Sheppard waives her claim as to Labor Code §204 but maintains her claims under §510 for unpaid overtime. Dkt. No. 17 at 30 (Opposition). With respect to the §510 claim, the complaint does not allege any information, let alone details, regarding why Ms. Sheppard was not paid, how/when she was misclassified, who failed to accurately record the hours she worked, or when this

1    all occurred. Further, even if Ms. Sheppard provided these details, she still fails to respond to
2    defendants' arguments that the §510 claim is invalid since the language of the statute does not
3    expressly make it applicable to public agencies.

4    Ms. Sheppard does not oppose or otherwise respond to defendants' arguments regarding
5    claim 21 for violations of California Labor Code §226.7 – failure to provide meal and rest breaks.
6    As with the §510 claim, Ms. Sheppard's §226.7 claim fails because the statute includes no language
7    making it applicable to public agencies. *See Cal. Correctional Peace Officers' Ass'n v. State*, 188
8    Cal.App. 4th 646, 653 (2010) ("[P]ublic entities are not subject to a general statute unless expressly
9    included."); *see also Wells v. One2One Learning Found.*, 39 Cal.4th 1164, 1192 (2006) ("[A]bsent
10   express words to the contrary, governmental agencies are not included within the general words of
11   a statute."); *see also Campbell v. Regents of Univ. of California,* 35 Cal.4th 311, 330 (2005)
12   ("Generally . . . provisions of the Labor Code apply only to employees in the private sector unless
13   they are specifically made applicable to public employees.").

14   As such, Ms. Sheppard's claims under §§ 204, 226.7, and 510, the 20th and 21st causes of
15   action, are DISMISSED with prejudice.

### G.    22nd Claim – Intentional Interference with Prospective Economic Advantage (Ms. Sheppard Only)

18   Intentional interference with prospective economic advantage requires that plaintiff plead:
19   (1) an economic relationship between the plaintiff and some third party, with the probability of
20   future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3)
21   intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption
22   of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the
23   defendant. *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003).

24   The complaint alleges that in approximately August 2019, "in the turbulence after the
25   retaliatory termination of Ms. Howe, Ms. Sheppard had an oral agreement" with the Community
26   Foundation to provide independent services to put on an Executive Leadership Training. *Id*. ¶ 615.
27   Allegedly, the Community Foundation's executive director, Megan Allende, Ms. Chandler's "close
28   personal friend," promised to pay Ms. Sheppard $12,000 for her services. *Id*. ¶¶ 615, 618. The

funds from which Ms. Sheppard would be paid were allegedly controlled by Ms. Chandler. *Id.* ¶ 619. The complaint alleges Ms. Chandler contacted "Ms. Allende to cancel Ms. Sheppard's agreement to conduct the Executive Leadership Program." *Id.* ¶ 625. While Ms. Allende did not cancel Ms. Sheppard's role altogether, Ms. Sheppard's workload was significantly reduced and she was only allegedly paid $2,000. *Id.* ¶ 626. These allegations are sufficient and render Ms. Sheppard's 22nd cause of action viable for purposes of the instant motion to dismiss.

## CONCLUSION[10]

Based on the forgoing, the Court hereby DISMISSES claims 1-19 WITHOUT prejudice.

The 20th and 21st claims are DISMISSED WITH prejudice.

The motion to dismiss is DENIED with respect to the 22nd cause of action.

Defendants' Request for Judicial Notice is DENIED. Dkt. No. 9-1.

Any amended complaint must be filed on or before August 14, 2020. The Court does not typically grant this much time to amend but does so in this instance in the hope plaintiffs will use it to streamline and clarify their complaint, and to reduce redundancy. F.R.Civ.P. 1.

**IT IS SO ORDERED**.

Dated: July 8, 2020

SUSAN ILLSTON
United States District Judge

---

[10] Defendants seek dismissal of Ms. Chandler and Mr. Schurtz insofar as they are sued in their individual capacity. An "employee/supervisor … cannot be held individually liable under Title VII and similar statutory schemes." *Reno v. Baird*, 18 Cal.4th 640, 649 (1998) (quoting *Wathen v. General Elec. Co.*, 115 F.3d 400, 404 (6th Cir. 1997) (internal quotation marks omitted). As such, any claims brought against Ms. Chandler and Mr. Schurtz in their individual capacity pursuant to FEHA or Title VII are DISMISSED WITH PREJUDICE.
Plaintiff can bring suit against defendants in their individual capacity under § 1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1993). However, "the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." *McAllister v. Los Angeles Unified School Dist.*, 216 Cal.App.4th 1198, 1212 (2013) (citing *Hafer*, 502 U.S. at 27) (internal citation and quotation marks omitted). As plead, the complaint does not allege any facts or claims against Ms. Chandler and Mr. Schurtz outside the context of their official duties as Mendocino County employees. Thus, the Court DISMISSES Ms. Chandler and Mr. Schurtz in their individual capacity WITHOUT prejudice. Any renewed claims against Ms. Chandler or Mr. Schurtz in their individual capacity should be made on facts not currently before the Court.