UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA HOWE, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>MENDOCINO COUNTY, et al.,<br><br>   Defendants. | Case No. 20-cv-02622-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 36 |

On October 9, 2020 the Court heard oral argument on defendants' motion to dismiss plaintiffs' First Amended Complaint ("FAC"). Dkt. No. 42. Having considered the arguments made and the papers submitted, the Court hereby GRANTS in part and DENIES in part defendants' motion to dismiss.

**BACKGROUND**

The three plaintiffs – Barbara Howe, Jani Sheppard, and Carol Morgan – are former and current employees of Mendocino County's Health and Human Services Agency ("HHSA"). Dkt. No. 31 ¶¶ 24-26. Their original complaint was filed on April 15, 2020. Dkt. No. 1. Defendants filed a motion to dismiss the original complaint which was granted in part and denied in part. Dkt. No. 28.

**Allegations re Plaintiff Barbara Howe**. Plaintiff Barbara Howe is a former employee at HHSA where she worked from October 2017 – May 30, 2019. Ms. Howe alleges she was "forcefully terminated" through compelled speech when she signed a resignation letter under duress and threat of termination. FAC ¶¶ 285–308. Ms. Howe alleges she made comments on May 15, 2019 to Emergency Response Partners as part of the Public Health Emergency Preparedness

1   Program (PHEPP). Specifically, Ms. Howe stated ambulances likely would not be available during
2   the next major disaster like a wildfire because "Carmel Angelo . . . by and through [defendant
3   Tammy Moss Chandler] had disrupted a flexible, multi-company ambulance system to divert the
4   contract to a favored provider." FAC ¶¶ 215–220.

5   Ms. Howe and co-plaintiff Jani Sheppard also gave HHSA employee Heidi Corrado, who
6   the FAC refers to as the "preferred lesbian," a negative performance review on May 20, 2019. FAC
7   ¶¶ 231, 257. They both allege that defendants William Schurtz and Tammy Moss Chandler
8   demanded Ms. Howe and Ms. Sheppard change a performance evaluation to be more positive. FAC
9   ¶¶ 235–236. Ms. Chandler told both Ms. Howe and Ms. Sheppard to "do nothing" and stop raising
10  the issues with Ms. Corrado's performance. FAC ¶256.

11  Ms. Howe alleges she was retaliated against for her speech and actions when days later, on
12  May 24, 2019, she was forced under duress to sign a one-page resignation letter by defendant
13  Tammy Moss Chandler. See FAC ¶¶ 280-313 (ECF pages 44-46).

14  After signing the letter, Ms. Howe also alleges defendants sought spurious temporary
15  restraining orders designed to destroy her reputation, further retaliation for the above activity. FAC
16  ¶¶ 501– 503. Ms. Howe claims she was entitled to a name clearing hearing. FAC ¶¶ 536–538.

17  Finally, Ms. Howe alleges she was discriminated against based on her sexual orientation
18  (heterosexual), gender, age, and engaging in protected activity, citing comments defendant Tammy
19  Moss Chandler made to Ms. Howe about how older employers are incapable of making good
20  decisions, multitasking, and struggling with technology. FAC ¶¶ 478–482.

21  **Allegations re Plaintiff Jani Sheppard**. Plaintiff Jani Sheppard has been employed by
22  HHSA from May 2018 – present and is currently a Senior Program Manager. FAC ¶ 25. Ms.
23  Sheppard alleges she was subject to retaliation because defendant Tammy Moss Chandler
24  erroneously thought Ms. Sheppard was the person who provided evidence in the TRO hearings
25  against the County and in favor of Ms. Howe. FAC ¶ 502. As a result, the complaint alleges Ms.
26  Sheppard was subject to a sham discrimination investigation concocted by defendant Katherine
27  Fengler and two other employees, Meredith Reinhard (who reports directly to Ms. Sheppard) and
28

Carol Mordhorst[1], who allegedly made comments to the effect that Ms. Sheppard "had to go." FAC ¶ 367–368. The discrimination investigation allegedly concerned Ms. Sheppard's activities in directing HHSA funds to underserved communities, which she was allegedly authorized and directed to do by State law. FAC ¶¶ 356–359.

Ms. Sheppard also alleges that Ms. Mordhorst told her that Ms. Reinhard and other "direct reports" called Ms. Sheppard an "angry black woman." FAC ¶ 372.

Ms. Sheppard's intrusion of speech claim surrounds a Tobacco Initiative she was supervising. She alleges defendant Tammy Moss Chandler prohibited HHSA staff from speaking with supervisors about the initiative. FAC ¶¶ 173–185. At a September 2019 Tobacco Coalition Meeting, Ms. Sheppard stated publicly that she was not permitted to speak with supervisors and Ms. Chandler was not able to engage in formal strategic planning and voiced her own frustration about the lack of leadership since Ms. Howe's compelled termination. FAC ¶¶ 195–197. Ms. Sheppard alleges she was retaliated against by being removed from meetings because of her association with Ms. Howe, with the discrimination investigation, and that she was demoted twice on March 26, 2020. FAC ¶¶ 198–203; ¶¶ 131–139. Defendant William Schurtz justified the demotion stating Ms. Sheppard had not completed her probationary periods. FAC ¶¶ 131–139.

**Allegations re Plaintiff Carol Morgan**. Plaintiff Carol Morgan has worked for HHSA from December 2017 – present as a Senior Nurse Care Manager. FAC ¶ 26. Ms. Morgan's claim primarily involves the conduct of Sharon Convery, who allegedly attempted to have Ms. Morgan falsify an HR questionnaire after the interview of County employee, Ms. Hashimoto, on January 30, 2020. FAC ¶ 267-270. Ms. Morgan filed a formal union grievance over these allegations. FAC ¶ 275.

Ms. Morgan also alleges she has spoken up against the backlog of case histories and the failure of the County managing agents to execute strategic plans, which has prevented foster children

---

[1] The FAC alleges Carol Mordhorst is "a contractor" who temporarily replaced Ms. Howe and who defendant Sharon Convery reported to. FAC ¶33 and 371. Ms. Mordhorst is a primary example of someone whom the complaint mentions but does so without providing helpful context or information. When did Ms. Mordhorst work for the County? Who reported to her? Who did she report to?

3

from receiving medical services. FAC ¶ 265.

Ms. Morgan claims she was retaliated against for her actions and speech by being denied a promotion. In late 2019 the County sought to appoint someone for a promotional position applying the civil service rules and ordinances; defendants allegedly enforced "illegal policies and procedures" to "promote a preferred candidate over one selected from the written policies." FAC 20 ¶¶ 146–147.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The court is not required to accept as true "merely conclusory [allegations], unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

As the Court explained at the hearing, it has concerns over whether plaintiffs can adequately plead the 1st – 4th causes of action. These four causes of action are the only federal claims alleged; therefore, if they were dismissed, plaintiffs could no longer assert federal jurisdiction. In that event, the Court feels it best to leave the California claims for a California judge. With that in mind, the Court only addresses the federal causes of action (1-4) below.

As stated in the FAC, the first four causes of action are:

1. Illegal Intrusion on First Amendment Right to Free Speech in Violation of 42 U.S.C. §1983

2. Retaliation-Exercising Free Speech *Monell* Action -- Violation of 42 U.S.C. §1983
    A. Based on Official Policy, Practice or Custom;
    B. Based on Act of Final Policymaker;
    C. Based on Ratification;
    D. Based on Policy of Failure to Train or Supervise.

3. Wrongful Termination/Adverse Employment Action -- Violation 14th Amendment Right to Property and Equal Protection *Monell* Action -- Violation of 42 U.S.C. §1983
    A. Based on Official Policy, Practice or Custom;
    B. Based on Act of Final Policymaker;
    C. Based on Ratification;
    D. Based on Policy of Failure to Train or Supervise.

4. Wrongful Termination/Adverse Employment Action in Violation Of 14th Amendment Right to Due Process, *Monell* Action- Violation of 42 U.S.C. §1983
    A. Based on Official Policy, Practice or Custom;
    B. Based on Act of Final Policymaker;
    C. Based on Ratification;
    D. Based on Policy of Failure to Train or Supervise.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The FAC brings the federal causes of action against the County of Mendocino and individual defendants Tammy Moss-Chandler, William Schurtz, and Sharon Convery in their individual capacities.

**§ 1983 Claims Against County of Mendocino.** To plead a § 1983 claim against a municipality, a plaintiff must show that the defendant municipality's employees or agents acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Municipal entities do not have liability based merely on the fact that they employed the alleged wrongdoers. There is no respondeat superior liability under § 1983, i.e. no liability under the theory that an entity is liable simply because it employs a person who has violated a plaintiff's rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Local

governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell*, 436 U.S. at 690. Under § 1983, a municipality may be held liable based on an unconstitutional policy even where it is not an express municipal policy that has been formally adopted. In particular, the Supreme Court has recognized that a municipality may be held liable on the basis of an unconstitutional policy if the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, conducts or habits." *Warner v. County of San Diego*, No. 10-1057, 2011 U.S. Dist. LEXIS 14312, 2011 WL 662993, *4 (S.D.Cal. Feb.14, 2011).

In the instant action, plaintiffs must show that the County of Mendocino, the municipal defendant, had/has employees or agents who acted pursuant to an official custom pattern or policy that violated plaintiffs' rights. For all four of the causes of action above, plaintiffs have failed to adequately plead and articulate the alleged official policy, practice or custom. While, like the original complaint, the FAC is replete with general references to "illegal policies and procedures," it says very little, if anything, distilling what exactly the policy, practices, or customs are. Referring to and quoting from the alleged Grand Jury Report (FAC ¶¶ 148-172) is not enough to establish an official policy, practice, or custom. Plaintiffs must tie their allegations together and not ask the Court to connect disparate dots.

**§ 1983 Claims Against Individual Defendants.** Plaintiff can bring suit against defendants in their individual capacity under § 1983. *Hafer v. Melo*, 502 U.S. 21, 31 (1993). Under § 1983, a supervisor can be held liable in his or her individual capacity "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted). However, "the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." *McAllister v. Los Angeles Unified*

*School Dist.*, 216 Cal.App.4th 1198, 1212 (2013) (citing *Hafer*, 502 U.S. at 27) (internal citation and quotation marks omitted). "The requisite causal connection can be established ... by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." S*tarr v. Baca,* 652 F.3d 1202, 1207-1208 (9th Cir. 2011) (internal quotation marks and citations omitted) (alterations in original).  Thus, a supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (quoting Starr, 652 F.3d at 1208).  Thus, plaintiffs must allege such a causal connection for *each* defendant sued in an individual capacity.

The first four causes of action fail for these reasons and also for those stated below.

## I. First Cause of Action: Violation of §1983 – Illegal Intrusion of First Amendment Right to Free Speech

To state a free speech violation under § 1983, the plaintiff must allege that "by his actions [the defendant] deterred or chilled [the plaintiff's protected] speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Menotti v. City of Seattle*, 409 F.3d 1113, 1155 (9th Cir. 2005) (*citing Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)); *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("[T]he proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'").  To prevail on their first cause of action for illegal intrusion of First Amendment Right to Free Speech, plaintiffs must allege specific facts showing the individual defendants' personal participation in a deprivation of plaintiffs' right to free speech; conclusory statements are not enough. *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiffs' allegations for the first cause of action are virtually identical to those of the second

cause of action – as such, it seems at its heart, plaintiffs' claims are for retaliation.[2] Despite over 80 pages of allegations, plaintiffs' theory for the first cause of action never fully bakes – plaintiffs have not alleged what actions if any defendants took to chill protected speech.

## II. Second Cause of Action: Violation of §1983 – Retaliation for Exercising Free Speech, *Monell* Action

To succeed on this cause of action, plaintiffs must establish (1) they spoke on a matter of public concern; (2) whether they spoke as a private citizen rather than a public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). "[F]ailure to meet any one of [these factors] is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1091 n.4 (9th Cir. 2013) (en banc).

Plaintiffs have not adequately plead their exercise of protected speech was a "substantial or motivating factor" leading to the adverse employment actions, nor have they adequately plead the causal link between the allegedly protected speech and the alleged retaliation. Again, the allegations are conclusory and not plead with sufficient particularity.

## III. Third Cause of Action: Violation of §1983 – Wrongful Termination/Adverse Employment Action – Violation of 14th Amendment Right to Property and Equal Protection, *Monell* Action

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne*

---

[2] In such instances, other courts in the Northern District have construed a § 1983 cause of action titled "Intrusion of First Amendment Right to Free Speech" as a First Amendment retaliation cause of action. *See Ryan v. Santa Clara Valley Transp. Auth.*, 16-CV-04032-LHK, 2017 U.S. Dist. LEXIS 116432, *7, 2017 WL 3142130 ("However, the allegations in Counts One and Two were substantially the same, and Plaintiff analyzed both Counts One and Two as retaliation causes of action. Thus, the Court "construe[d] both Counts One and Two as First Amendment retaliation claims under § 1983…").

*Living Ctr.*, 473 U.S. 432, 439 (1985). "To state a § 1983 claim for violation of the Equal Protection Clause[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted).

The FAC summarily concludes defendants, "as final policymakers, treated plaintiffs differently than other similarly situated COUNTY employees." Dkt No. 31 at 69 ¶458. But the FAC fails to allege plaintiffs were treated differently based upon membership in a protected class. The FAC does mention race, sexual orientation, and age discrimination but few, if any, facts in support thereof. For the few facts that are offered, little if any context is provided. For example, the complaint alleges Ms. Mordhorst told Ms. Sheppard that Ms. Reinhard and other "direct reports" called Ms. Sheppard an "angry black woman." FAC ¶ 372. The complaint is silent as to when this happened, who, if anyone, Ms. Sheppard escalated the incident to, what Ms. Mordhorst's relationship with Ms. Sheppard was at the time, etc. To survive a motion to dismiss, plaintiffs must systematically go through an analysis for each plaintiff bringing this cause of action alleging how each plaintiff was treated differently based on their membership in a protected class.

### IV. Fourth Cause of Action: Violation of §1983 – Wrongful Termination/Adverse Employment Action – Violation of 14th Amendment Right to Due Process, *Monell* Action

The allegations for plaintiffs' fourth cause of action are virtually identical to those alleged in the third cause of action. The Court is not clear what process each respective plaintiff was allegedly denied.

### CONCLUSION

For the foregoing reasons, the Court DISMISSES the 1st-4th causes of action WITHOUT prejudice. **Plaintiffs must file an amended complaint on or before November 13, 2020**. This will likely be the last time the Court grants plaintiffs leave to amend. Plaintiffs should look carefully at what they can plausibly allege and carefully consider which defendants they wish to sue in which capacity (official/personal) and whether their case would be strengthened by eliminating duplicative

claims/defendants.

Further, if another motion to dismiss should be filed, it is not helpful for plaintiff to quote, without context and single spaced, new allegations added to the complaint. Plaintiffs should be able to explain to the Court why and how newly added allegations resolve the shortcomings outlined in this order.

**IT IS SO ORDERED**.

Dated: October 27, 2020

_____
SUSAN ILLSTON
United States District Judge